### BARBER ASPHALT PAVING CO. v. HEADLEY GOOD ROADS CO.*

(District Court, D. Delaware. July 13, 1922.)

No. 7, September Term, 1921.

1. Patents ⬳211(1)—"Road" held to include railroad crossings and platforms.

The word "road," as a generic term, includes highway, street, and lane, and as used in a contract licensing, on a royalty basis, the manufacture and sale of a patented emulsion "for street and road construction" *held* to include railroad crossings and station platforms, for which licensee made and sold the emulsion.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Road.]

2. Patents ⬳218(1)—Licensee liable for royalties on article equivalent to that licensed.

A licensee, expressly covenanting to promote the use and sale of the patented article, is liable for royalties, not only when he uses the identical article covered by the patent, but also when he uses an equivalent article.

At Law. Action by the Barber Asphalt Paving Company against the Headley Good Roads Company. Tried to court, and judgment for plaintiff.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*New trial granted 284 Fed. 177.

William G. Mahaffy, of Wilmington, Del., and Henry N. Paul (of Fraley & Paul), of Philadelphia, Pa., for plaintiff.

Charles F. Curley (of Saulsbury & Curley), of Wilmington, Del., and Augustus B. Stoughton and E. Waring Wilson, both of Philadelphia, Pa., for defendant.

MORRIS, District Judge. This is an action of covenant, tried to the court without a jury, in which Barber Asphalt Paving Company, a West Virginia corporation, seeks to recover from Headley Good Roads Company, a Delaware corporation, certain royalties alleged to be due under license agreement of April 8, 1919, wherein the plaintiff was the licensor and the defendant the licensee. By that agreement—which recites that the Barber Asphalt Paving Company, by a contract of January 8, 1919, acquired the exclusive right "to manufacture, use, and sell for road and street construction in the United States bituminous emulsions manufactured in accordance with the terms of either or both" letters patent No. 752,486 and No. 956,009, to L. S. Van Westrum, and also the right to grant sublicenses—the plaintiff granted unto the defendant the right "to manufacture, use, and sell, for street and road construction in the United States, bituminous emulsions manufactured in accordance with the terms of either or both of the aforementioned letters patent," subject to the payment of a specified royalty. The defendant, on its part, covenanted to pay the royalties, keep an account of the emulsion manufactured by it, and—

"to proceed with diligence with the exploitation, manufacture, use, and sale of bituminous emulsion manufactured under the agreement for road and street construction, and in all reasonable and proper ways and to the best of the defendant's ability to promote the use and sale of such bituminous emulsion."

The defendant has paid the royalty on all emulsion manufactured by it, with the exception of 293,809 gallons sold by the defendant to railroad companies for use in constructing crossings and platforms. This suit is to recover the royalty on that emulsion. The defenses are that the emulsion so used was not used "for street and road construction," within the meaning of the license agreement, and further that the emulsion manufactured and sold for those uses, although the same as that on which the royalties have been paid, was not the emulsion of the patents, or either of them.

The questions thereby raised, and here presented for determination, are (1) whether a "crossing" is a road or street; (2) whether a railroad platform is a road or street; and (3) whether the emulsion manufactured and sold by the defendant for those purposes was an emulsion covered by the patents.

[1] "Road" has been defined as "a public way for passage or travel; a strip of ground appropriated for travel, forming a line of communication between different places; a highway; hence, any similar passage for travel public or private." Northwestern Telephone Exch. Co. v. Minneapolis, 81 Minn. 154, 86 N. W. 71, 53 L. R. A. 175, quoting Cent. Dict. As a generic term it includes highway,

street, and lane. Webst. Dict.; Manchester v. Hartford, 30 Conn. 120. It has been held to include overland ways of every character. Griffin v. Sanborn, 127 Ga. 17, 56 S. E. 71. It may mean either a private way or a public thoroughfare. Elliott on Roads and Streets (3d Ed.) p. 10. "Road" is frequently used as synonymous with "highway." Holbrook v. McBride, 4 Gray (Mass.) 215; Stedman v. Southbridge, 17 Pick. (Mass.) 162; Vantilburgh v. Shann, 24 N. J. Law, 740; Brace v. N. Y. Cent. R. Co., 27 N. Y. 269. And the term "highway" includes sidewalks and other footways. Manchester, etc., R. Co. v. Reg., 3 Q. B. 528; 43 E. C. L. 851; Reg. v. Manchester, etc., R. Co., 2 Ry., etc., Cas. 711; 15 A. & E. Enc. of L. (2d Ed.) 352. A street is a road in a city or village, as distinguished from a road in the country. Bouv. Dict.; 27 A. & E. Enc. of L. (2d Ed.) 102. The meaning of the word "road," like the meaning of other words, is often enlarged or restricted by the other words with which it is used; for instance, as sometimes used, it means a public highway, and not a private way. Bogie v. Waupun, 75 Wis. 4, 43 N. W. 667, 6 L. R. A. 59; Curtis v. Embery, L. R. 7 Exch. 372. At other times it means a private way, and not a public highway. Hart v. Red Cedar, 63 Wis. 638, 24 N. W. 410.

Patent No. 956,009, the one mainly relied upon in this suit for all purposes, provides:

"* * * I * * * have invented new and useful improvements in methods of making roads. * * *

"My invention relates to improvements in methods of making roads, streets, public squares, roadbeds of railways, and other like surfaces, by means of an asphaltic cement laid cold.

"All bituminous roads, streets, etc., * * * have hitherto been built in the following manner: * * *

"It is well known that emulsions or oily substances are used for dustlaying purposes, * * * but as a method of constructing a permanent pavement it has this disadvantage. * * *

"* * * What I claim is: The method of building roads which," etc.

There is no evidence to indicate that the prior art requires a meaning narrower than its broad and generic meaning to be given the word "roads" as used in the claim. Nor, in my opinion, is the meaning restricted in any degree by the specification. As the inventor, in the first paragraph, refers to his invention as "improvements in methods of making roads," and in the second as "improvements in methods of making roads, streets, public squares, roadbeds of railways, and other like surfaces," it is obvious that the word "roads," as used in the first paragraph, has the same meaning as "roads, streets, public squares, roadbeds of railways, and other like surfaces," as used in the second paragraph, and, as I view it, the word "roads," as used in the claim, is as broad as the word "roads" as used in the first paragraph of the specifications. Neither the agreement granting a license to the plaintiff nor the agreement granting a sublicense to the defendant uses the words of the claim—"building roads"—in granting the right to manufacture, use, and sell the emulsion; but each uses, indiscriminately, the words for "street and road construction" or "road and street construction." I fail to find, however, in this bare fact sufficient to convince me that the licenses are narrower than the patent.

The precise question presented by this construction of the patent and licenses is whether railroad "crossings" and "platforms" are "roads" within the broad and generic meaning of that term. The evidence discloses that the crossings for which asphaltic emulsion is used are those at which railroads are crossed by a public or private way, and that the platforms are those at railroad stations upon which the traffic is vehicular or pedestrian. A crossing is the intersection of road and railroad. It is both railroad and road. The construction at such places is of two kinds—railroad building and road building—even though the duty to construct the road at such places rests by statute, charter, or otherwise upon the railroad companies. Construction, unnecessary elsewhere along the line of railroad, but done at crossings, for the primary purpose of enabling vehicles and pedestrians to continue their journey without interruption along and over the road, or to pass in safety over the railroad, is, as I view it, road or street construction, within the meaning of the words "road and street construction," as used in the license agreement made between the parties to this suit. A railroad platform is also a way for passage or travel. It forms a line of communication from public highway to depot, or from depot to train. Indeed, in Rudd v. Great Eastern Casualty & I. Co., 114 Minn. 512, 131 N. W. 633, 34 L. R. A. (N. S.) 1205, Ann. Cas. 1912C, 606, a railroad platform was held to be a "public highway," within the meaning of those words as used in an insurance policy there under consideration. Consequently, as I view it, railroad platforms, as well as railroad crossings, are within the broad and generic meaning of the word "road," and within the meaning of "street and road construction," as used in the license agreement.

[2] The defendant lastly contends that the emulsion manufactured by it is not the emulsion covered by the patent. It is, however, the same emulsion that has been manufactured and sold by the defendant at all times under the license and on which royalty has been paid. Furthermore, by the license agreement, the defendant expressly covenanted to promote the use and sale of the bituminous emulsion of the patent. It may be that the defendant is thereby estopped from denying that the emulsion here in question is not covered by the patent. Eureka Co. v. Bailey Co., 11 Wall. 488, 20 L. Ed. 209; Andrews v. Landers (C. C.) 72 Fed. 666; Eclipse Bicycle Co. v. Farrow, 16 App. D. C. 468. But it is not necessary to base the decision of this matter upon the doctrine of estoppel, for a licensee is liable, not only when he uses the identical article covered by the patent, but also when he uses an article equivalent thereto. St. Paul Plow Works v. Starling, 140 U. S. 184, 11 Sup. Ct. 803, 35 L. Ed. 404; Walker on Patents (5th Ed.) p. 367. And I think it clear from the evidence that the emulsion manufactured and sold by the defendant for railroad platform and crossing uses was in principle that described in the patent.

For the foregoing reasons, I am of the opinion that the plaintiff is entitled to recover from the defendant the sum of $3,044.58, with interest thereon from the 1st day of January, 1921; that amount having been agreed upon by the parties as the amount due in the event that the emulsion sold by the defendant for railroad platform and

crossing purposes should be found to come within the license agreement.

Consequently I find for the plaintiff, and assess its damages at the sum of $3,324.68.