BARBER ASPHALT PAVING CO. v. HEADLEY GOOD ROADS CO.

(District Court, D. Delaware. October 2, 1922.)

No. 7.

1. Patents ⬚218(3)—Liability for royalties due not affected by surrender of patent for reissue.

Liability for royalties due under a license contract is not affected by subsequent surrender and reissue of the patent.

2. Patents ⬚129—Evidence of invalidity irrelevant in action against licensee.

In an action to recover royalties due under a license contract, evidence of invalidity of the patent, unaccompanied by evidence of an eviction, even though the evidence of invalidity consists of admissions of the licensor, is irrelevant and immaterial.

3. Estoppel ⬚63—Contentions of plaintiff in action against licensee and in application for reissue held not inconsistent.

The contention of plaintiff in an action against a licensee that the specific description in the specification of the patent of the claimed novel fea-

---

ture of the invention should be read into its single claim for the purposes of the suit *held* not inconsistent with the statement in an application for reissue that such description was inadvertently omitted from the claim.

At law. Action by the Barber Asphalt Paving Company against the Headley Good Roads Company. On motion by defendant for new trial. Granted.

For former opinion, see 283 Fed. 236.

Henry N. Paul, of Philadelphia, Pa., and William G. Mahaffy, of Wilmington, Del., for plaintiff.

Augustus B. Stoughton, of Philadelphia, Pa., and Charles F. Curley, of Wilmington, Del., for defendant.

MORRIS, District Judge. This is an action at law instituted by Barber Asphalt Paving Company against Headley Good Roads Company to recover royalties under an agreement of July 8, 1919, authorizing the defendant to manufacture, use, and sell for the purposes therein mentioned bituminous emulsions manufactured in accordance with United States letters patent No. 956,009 to L. S. Van Westrum. The case has been tried by the court without a jury. A finding was made on July 13, 1922, in favor of the plaintiff. (D. C.) 283 Fed. 236. The defendant has moved for a new trial upon the ground of newly discovered evidence, consisting of a reissue, No. 15,401, granted July 4, 1922, upon an application filed May 20, 1921, of the aforementioned patent. The file wrapper and contents in the matter of the reissue have been submitted with the motion. As the trial was had prior to the granting of the reissue, no question of diligence arises.

[1] The defendant contends that under R. S. § 4916 (Comp. St. § 9461), the legal effect of the reissue and the surrender of the original patent is to cancel and extinguish the license agreement and all rights thereunder, and that consequently, the character of the newly discovered evidence is such as to change the result if a new trial be granted. Is this contention sound? The Supreme Court, in construing the reissue statutes, has uniformly held that a surrender of a patent for reissue is a "legal cancellation and extinguishment of it; that no rights could afterwards be asserted upon it, and that suits pending for an infringement of such patent fell with its surrender, because the foundation upon which they were begun no longer existed." Allen v. Culp, 166 U. S. 501, 504, 17 Sup. Ct. 644, 41 L. Ed. 1093; Moffitt v. Garr, 1 Black. 273, 17 L. Ed. 207; Reedy v. Scott, 23 Wall. 352, 364, 23 L. Ed. 109; Peck v. Collins, 103 U. S. 660, 26 L. Ed. 512; Meyer v. Pritchard, 131 U. S. Appendix CCIX, 23 L. Ed. 961. It must be remembered, however, that a suit for royalties under a license agreement is not founded directly upon the patent as is a suit for infringement, but rests upon the license agreement. With respect to suits for royalties the law is clear, I think, that, as stated by Walker on Patents (5th Ed.) § 307:

"No warranty of validity of the letters patent is implied in any license given thereunder; and unattended proof of invalidity is therefore no defense to any suit for promised royalties."

This rule is the same regardless of the nature or character of the evidence constituting the proof of invalidity. The defense of a licensee in an action for royalties must, to be sufficient, consist of "something corresponding to eviction." White v. Lee (C. C.) 14 Fed. 789; McKay v. Smith (C. C.) 39 Fed. 556; Holmes, Booth & Haydens v. McGill, 108 Fed. 238, 47 C. C. A. 296; Victory Bottle Capping Mach. Co. v. O. & J. Mach. Co. (C. C. A.) 280 Fed. 753; Birdsall v. Perego, Fed. Cas. No. 1,435. The reason underlying this principle is fully discussed and considered in the cases cited, and need not be here repeated. As an eviction is not a defense in a suit by a landlord against a tenant for rent that became due prior to such eviction (Smith v. Billany, 4 Houst. [Del.] 113, 118; American Bonding Co. v. Pueblo Inv. Co., 150 Fed. 17, 30, 31, 80 C. C. A. 97, 9 L. R. A. [N. S.] 557, 10 Ann. Cas. 357), so, by analogy and upon authority, an eviction is not a defense to a suit for royalties accruing before the eviction occurred. Walker on Patents, § 307. The case of Ross v. Fuller & Warren Co. (C. C.) 105 Fed. 510, relied upon by the defendant, merely holds, as I understand it, that eviction is a defense to a suit for royalties accruing after the eviction. Consequently, and as the royalties involved in the case at bar all became due even before the application for a reissue of the patent was filed, I must conclude not only that evidence that the original patent was surrendered and a reissue granted on July 4, 1922, would not be controlling upon a new trial, but also that such facts are wholly irrelevant and immaterial to the issues of this case.

The defendant presses another point, however. It is that the representations and contentions made by the plaintiff to the Commissioner of Patents in connection with the reissue and found in the file wrapper are material to the issues of this case, and, if admitted upon a new trial, would probably be controlling. The statements and contentions of the plaintiff here relied on by the defendant are: First, those asserting that letters patent No. 956,009 were inoperative and invalid, and, second, those attributing such invalidity to the failure to set out specifically in the claim the matters found in lines 83–85 of the description.

[2] In considering each of these matters it must be remembered that the suit at bar is not an infringement suit, but one to recover royalties under a license agreement, and that, as has been hereinbefore pointed out, in a suit of that character mere invalidity of the patent is not a defense. Hence evidence of invalidity, unaccompanied by evidence of an eviction, even though the evidence of invalidity consists of admissions of the licensor, is, obviously, irrelevant and immaterial. Moreover, as plaintiff's statements that the original patent was "inoperative or invalid" are not material in a suit of this character, and as those statements of the plaintiff have in no way influenced the action of the defendant as licensee, the doctrine of estoppel is here without application.

[3] The second branch of defendant's last contention remains to be considered. Lines 83–85 of the original patent are:

" * * * What I claim as new is that I use as the base of my asphaltic cement hard bitumen which it not fluid when cold, in excess over fluxes and chemicals."

The single claim of that patent reads thus:

"Having thus described my invention, what I claim is: The method of building roads, which consists in mixing an asphaltic cement emulsified with an agent whose basis is water, with broken stones, gravel, earth, etc., in their natural condition, and spreading and compacting the mixture on a suitable foundation, substantially as described."

With respect thereto the oath filed with the application states:

"And deponent further says that the errors which render such patent so invalid arose from inadvertence and mistake. * * *

"That the following is a true specification of the errors which it is claimed constitute such inadvertence or mistake relied upon:

"3. The specification states that the novelty of the invention is found in the use as the base of the asphaltic emulsion of a hard bitumen in excess over fluxes and chemicals (meaning the soap as above explained), but, although this was stated to be the novel point of applicant's invention, it was not specifically mentioned in the claim, and there should have been a claim covering the use in the patentee's method of building roads of such emulsified asphaltic cement in which the bitumen is in excess over fluxes and chemicals."

At the trial plaintiff contended that lines 83–85 should for the purposes of this suit be read into the claim proper. Defendant insists that the position taken by the plaintiff at the trial was inconsistent with the position taken by it in the Patent Office, because plaintiff's assertion in the Patent Office of the invalidity of the patent by reason of the failure to incorporate the provisions of lines 83–85 of the specification into the claim proper is, as defendant asserts, irreconcilable with the plaintiff's contention at the trial that a proper construction of the patent required lines 83–85 to be read into the single claim, in that the necessary consequence of such construction is a denial of the invalidity asserted by the plaintiff in the Patent Office, and that, had plaintiff's assertions in the Patent Office been known at the time of the trial, it would not here have been heard to deny the invalidity theretofore asserted by it. I think, however, that instead of being inconsistent, the position taken by the plaintiff in this suit is identical with that taken by it in the Patent Office; the difference in the character of the two proceedings being considered. Here, even if the patent was in law and fact invalid from the time of its grant, yet, so far as this suit between licensor and licensee is concerned, it must be considered as valid. Hence the only question here to be considered with respect to the patent pertained to its scope. In the Patent Office proceedings one question at least was the scope of the claim to which the patentee's invention entitled him. With respect to this the plaintiff's contention was there the same as in the suit at bar. Consequently I think that plaintiff's representations in the Patent Office are not material to this suit.

Notwithstanding the foregoing conclusions, in order to enable the defendant to include the file wrapper and contents in its bill of exceptions to the end that defendant's contentions herein considered may be passed upon by the Court of Appeals in this rather than in a subsequent suit, I shall grant the defendant's motion for a new trial.